IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **EVARISTE KABURA,**<br><br>            **Petitioner,**<br><br>v.<br><br>**LAURA MCNEER, Field Director, Salt Lake City Field Office, United States Citizenship and Immigration Services, et al.,**<br><br>            **Respondents.** | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PETITIONER'S MOTION FOR FEES**<br><br>Case No. 2:17-cv-881<br><br>Judge Clark Waddoups |

Before the court is Petitioner Evariste Kabura's Bill of Costs (ECF No. 65) and Motion for Attorney's Fees Pursuant to the Equal Access to Justice Act (ECF No. 66) (collectively the "Motion"), which ask the court to grant him $9,875.00[1] in attorney's fees and $826.40 in costs. The Motion has been fully briefed,[2] and neither side requested a hearing on the same. For the reasons stated herein, Petitioner's Motion is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

Mr. Kabura was born in a refugee camp in Rawanda. When he was fifteen, his family fled genocide in Rawanda and spent approximately fourteen years in Tanzania. In June of 2007, he and his family, including his wife and their four children, came to the United States as refugees. Mr. Kabura was granted permanent resident status at that time. In March 2010, Mr.

---

[1] Plaintiffs' Motion requests $ $9,468.75, and his Memorandum in Reply (ECF No. 68) requests an additional $406.25 for his preparation of that pleading. If Petitioner establishes that he is eligible for a fee award, he is also entitled to recover "fees on fees," being the time he reasonably expended on litigating this fee request. *See Commissioner, INS v. Jean*, 496 U.S. 154, 163–65 (1990).

[2] The court notes that Respondents' original Response to Plaintiff's Motion for Costs and Fees under the Equal Access to Justice Act (ECF No. 67) was overlength but that Respondents cured the error by submitting an Amended Response (ECF No. 69-1) that complied with the page length requirements set forth in DUCivR 7-1(b)(2)(C). The court limited its review to Respondents' Amended Response to Plaintiff's Motion for Costs and Fees under the Equal Access to Justice Act (ECF No. 69-1).

1

Kabura was charged with, and convicted of, violating a temporary protective order that was imposed while he and his wife were legally separated (the "Violation"). The basis of the Violation was that he had attempted to call his wife on more than one occasion.

Mr. Kabura applied for naturalization to become a citizen of the United States on August 12, 2016. His application for naturalization included all relevant information regarding his conviction for violating the temporary protective order. He thereafter had an interview and examination with the United States Citizenship and Immigration Services ("USCIS") on December 21, 2016, and he passed all tests and requirements. After the examination, USCIS requested additional information regarding Mr. Kabura's Violation, and Mr. Kabura timely responded to the request.

On July 28, 2017, over 200 days after his examination, USCIS issued a notice to appear (the "Notice to Appear") to Mr. Kabura that notified him he was removable from the United States due to the Violation. (ECF No. 2 at ¶10). Thereafter, on August 3, 2017, Mr. Kabura filed his Petition, arguing that because USCIS had exceeded the statutorily-permitted 120-day period to render a decision on his application for naturalization, the court could, and should, render a decision in its place. Almost three weeks later, on August 24, 2017, the Notice to Appear was received by the Department of Justice, thereby commencing removal proceedings against Petitioner. *See* 8 C.F.R. § 1003.14; (ECF No. 2; ECF No. 19-3; ECF No. 60 at 12).

The United States promptly moved to dismiss the Petition, arguing that the filing of the Notice to Appear had commenced removal proceedings against Mr. Kabura, and that pursuant to 8 U.S.C. § 1429, the court no longer had jurisdiction to hear Mr. Kabrua's request. (ECF No. 10). The court granted the motion to dismiss and closed this matter. (ECF No. 27). Mr. Kabura thereafter moved to alter or amend, asking the court to reconsider the dismissal. (ECF No. 29).

The court ultimately granted Mr. Kabura's motion and reopened this matter on the basis that because the Notice to Appear did not comply with the governing statute, removal proceedings had not been commenced against him, and the court was not, therefore, stripped of its jurisdiction to render a decision on his Petition.  (ECF No. 32).  The court held an evidentiary hearing on Mr. Kabura's Petition on March 4, 2019 (the "Evidentiary Hearing"), at which it heard testimony from Mr. Kabura and two witnesses who testified on his behalf.  (ECF No. 42).

On March 24, 2020, the court issued a Memorandum Decision and Order (ECF No. 60) in which it approved and granted Petitioner's application for naturalization and remanded the matter back to USCIS to complete Petitioner's naturalization process.  Respondents timely appealed the court's decision (ECF No. 61) but ultimately voluntarily dropped, and dismissed, the appeal (ECF No. 64).  The Tenth Circuit issued a mandate dismissing the appeal on June 5, 2020 (ECF No. 64), and Petitioner thereafter filed a Bill of Costs on June 19, 2020 (ECF No. 65) and his Motion for Attorney's Fees on June 22, 2020 (ECF No. 66).  Petitioner's Motion requests his fees and costs pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412.

## LEGAL STANDARD

"The EAJA requires a court to award fees and other expenses to a prevailing party in a suit against an agency of the United States 'unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.'" *Gutierrez v. Sullivan*, 953 F.2d 579, 584 (10th Cir. 1992) (quoting 28 U.S.C. § 2412(d)(1)(A)).

"The government bears the burden of proving that its position was substantially justified."  *Id.* (citing *Estate of Smith v. O'Halloran,* 930 F.2d 1496, 1501 (10th Cir.1991)). "In this circuit the test for substantial justification is essentially one of reasonableness in both law and fact."  *Id*. at 584–85 (quotations and citations omitted).  This "reasonable test" "breaks down

into three parts: the government must show that there is a reasonable basis for the facts alleged; there exists a reasonable basis in law for the theory it propounds; and that the facts will reasonably support the legal theory advanced." *Id.* (quotations and citations omitted; quote cleaned up).

## DISCUSSION

In determining whether Petitioner is entitled to be awarded fees under the EAJA, the court must answer five questions: 1) whether Petitioner was the "prevailing party" in this action; 2) whether Respondents have established that their position was "substantially justified"; 3) whether "special circumstances make an award unjust"; 4) whether Petitioner's application for fees was complete and timely submitted; and 5) whether Petitioner's requested amount is reasonable. *See Comm'r, INS v. Jean*, 496 U.S. 154, 158 (1990); *see also Hackett v. Barnhart*, 475 F.3d 1166, 1175–76 (10th Cir. 2007) (requiring a district court to determine on remand "the reasonableness of the requested fees").

### I. Petitioner was the prevailing party.

In his Motion, Petitioner asserts that he was the prevailing party, and Respondents do not contest this fact in their Response. The court therefore finds that Petitioner is the prevailing party in this matter.

### II. Respondents' Position was not substantially justified.

The central question for any request for fees under the EAJA is whether the government's position was substantially justified. It is Respondents' burden to establish that it was, and it can meet that burden by showing "that there is a reasonable basis for the facts alleged; there exists a reasonable basis in law for the theory it propounds; and that the facts will reasonably support the legal theory advanced." *Gutierrez*, 953 F.2d at 584–85.

4

But before such analysis may occur, it must first be determined what Respondent's "position" was. Under the EAJA, "'position of the United States'" means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based . . . .", and whether that position was substantially justified "shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought." 28 U.S.C. §§ 2412(d)(2)(D), 2412(d)(1)(B); *see also Blakley v. United States*, 593 F.3d 1337, 1341 (Fed. Cir. 2010) ("In the context of EAJA claims, we have held that the 'position of the United States' in judicial proceedings refers to the United States' position 'throughout the dispute, including not only its litigating position but also the agency's administrative position.'" (citation omitted)).

Respondents assert that they had two positions in this matter: "that removal proceedings precluded judicial review of Plaintiff's naturalization application," and "that removal proceedings were ongoing because the Notice to Appear was valid." (ECF No. 69-1 at 3–5). While these are certainly positions that Respondents held *in this litigation*, Respondents omit another of its primary positions in this matter—initiating removal proceedings against Petitioner. This was "the action . . . by the agency upon which [this] civil action is based," and must also therefore be considered when the justification of Respondents' position is determined. *See* 28 U.S.C. § 2412(d)(2)(D)

The Supreme Court has recognized that although "[a]ny given civil action can have numerous phases," in judging the justification of a position, a court must treat the "case as an inclusive whole, rather than as atomized line-items." *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 161– 62 (1990). Ultimately, the court is to make a "'one threshold determination'" as to whether

5

Respondents' position was substantially justified. *Hackett v. Barnhart*, 475 F.3d 1166, 1174 (10th Cir. 2007) (citations omitted). In treating the case "as an inclusive whole," the court is mindful that "the fact that the government's litigating position was substantially justified does not necessarily offset prelitigation conduct that was without a reasonable basis" and that "fees generally should be awarded where the government's underlying action was unreasonable even if the government advanced a reasonable litigation position." *Id.* (quotations and citations omitted).

Here, Respondents' prelitigation conduct was to initiate removal proceedings against Petitioner. Their basis for removal was that over six years before he applied for naturalization, Petitioner violated a temporary (and subsequently dissolved for lack of prosecution) protective order by attempting to contact his wife while they were legally separated. Given the fact that this violation was technical, that Petitioner's representation that he did not know about the protective order, that the protective order was dissolved when his then-wife failed to appear at a hearing to pursue it, that the violation did not result in any actual contact or communications between Petitioner and his then-wife, that there was never an allegation that Petitioner had threatened or acted violently towards his then-wife, and that Petitioner had successfully completed his term of probation for the violation, the court finds it was unreasonable for Respondents to initiate removal proceedings against Petitioner. (ECF No. 60 at 17–18). Respondents' unreasonable action is the basis of this litigation and taints the reasonableness of all of Respondents' subsequent positions.

Respondents argue that the two positions they took in this litigation were reasonable and justified. Even if the court accepts this as true, those justifiable litigation positions do not "offset [Respondents'] prelitigation conduct that was without a reasonable basis." *Hackett*, 475 F.3d at 1174. Respondents' decision to attempt to remove Petitioner was unreasonable in light of the

evidence before Respondents, and the fact that, *assuming arguendo*, it could assert justifiable arguments in this litigation as to why this court did not have jurisdiction to review Petitioner's application for naturalization, does not offset that unreasonableness. *Hackett*, 475 F.3d at 1174. Thus, looking at this case "as an inclusive whole, rather than as atomized line-items," the court determines that Respondents' position in this case was not substantially justified. *See Jean*, 496 U.S. at 161–62.

### III. No special circumstances are present that would make an award unjust.

Respondents do not argue that any "special circumstances" exist in this matter that would "make an award unjust," and the court does not find any such circumstances present.

### IV. Petitioner's request for fees was timely and complete.

Under 28 U.S.C. § 2412(d)(1)(B), "[a] party seeking an award of fees . . . shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed." "The party shall also allege that the position of the United States was not substantially justified." *Id.*

The "final judgment" in this matter, being "a judgment that is final and not appealable," was entered on June 5, 2020, when the Tenth Circuit issued its mandate dismissing Respondents' appeal (ECF No. 64). *See* 28 U.S.C. § 2412(d)(2)(G). Thereafter, on June 19, 2020, Petitioner filed his Bill of Costs (ECF No. 65) and on June 22, 2020, filed his Motion (ECF No. 66). Petitioner's Bill of Costs included an itemized statement of the expenses Petitioner incurred, and his Motion states that he was the "prevailing party and is eligible to receive an award under this

subsection"; included "the amount sought, including an itemized statement . . . stating the actual time expended and the rate at which fees and other expenses were computed"; and alleged that "the position of the United States was not substantially justified." *See* 28 U.S.C. § 2412(d)(1)(B). Petitioner's request for costs and fees is therefore timely and complete.

### V.     Portions of Petitioner's request for fees are unreasonable.

Underlying all requests for costs and fees is the requirement that the request be reasonable. *Hackett*, 475 F.3d at 1175–76. "When determining what is a reasonable award of attorney fees, the district court must calculate the 'lodestar,' which is the reasonable number of hours spent on the litigation multiplied by a reasonable hourly rate." *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1233 (10th Cir. 2000) (citation omitted).

Here, Petitioner has set hourly rate at the "EAJA statutory rate" of $125 per hour. (ECF No. 66 at 1–2). Such a rate is reasonable and is not challenged by Respondents. Respondents do, however, argue that the hours that Petitioner spent on this case in unreasonable, and should be reduced, because Petitioner has improperly including in his request time that was not "spent on the litigation." Specifically, Respondents challenge time that Petitioner spent 1) working on the underlying administrative proceeding, 2) working on Petitioner's son's VISA petition, and 3) filing a correction to a pleading.

Respondents primary attack on Petitioners' requested fees focuses on 17:15[3] that Petitioner billed for time related to Immigration Court proceedings. In support of their argument, Respondents cite *Ardestani v. INS*, 502 U.S. 129, 139 (1991). *Ardestani* has generally been recognized as holding that "administrative deportation proceedings are not adversary adjudications under Administrative Procedure Act and therefore do not fall within category of

---

[3] Respondents do not itemize the entries that they target, and, as discussed below, the court's calculation of time that Petitioner devoted to proceedings before the Immigration Court totaled 16:35.

8

proceedings for which EAJA award is authorized." *See Nadarajah v. Holder*, 569 F.3d 906, 919 (9th Cir. 2009). In response, Petitioner argues that *Ardestani* dealt only with whether an administrative deportation proceeding constituted an "adversary adjudication 'under section 554' within the meaning of the EAJA" and thus does not apply to his motion, which is raised under 28 U.S.C. § 1842(d)(1). (ECF No. 68 at 9–10). But § (d)(1) only discusses the ability to recover of fees for time spent in *civil* actions, which Petitioner's proceedings before the Immigration Court were not.

Rather, the recovery of fees for agency adjudications like those conducted in Immigration Court are governed by 5 U.S.C. § 504. Under *Ardestani*, the proceedings before the Immigration Court for which Petitioner requests fees are not "adversary adjudication[s]" and are not therefore recoverable. *See Ardestani*, 502 U.S. at 139. Before *Ardestani* was decided, a party could recover fees under the EAJA for time spent in administrative proceedings that were "'intimately tied to the resolution of the judicial action and necessary to the attainment of the results Congress sought to promote by providing for fees.'" *See Nadarajah*, 569 F.3d at 919 (*quoting Pollgreen v. Morris,* 911 F.2d 527, 534–36 (11th Cir.1990)). But since *Ardestani*, recovery has been narrowly limited to proceedings that arise out of "post-litigation situations . . . where there was a court-ordered remand for further administrative proceedings and the agency representation was necessary to carrying out the court's order." *Id*. As such, "[t]he government correctly objects to [Petitioner's] request for fees for representation before the IJ . . . ." *See id*.

The court's review of Petitioner's submitted time entries concluded that the following nine entries were for time Petitioner devoted to proceedings before the Immigration Court:

1. October 3, 2018 — 1:45
2. October 4, 2018 — 4:30

3. November 28, 2018 — 3:35

4. September 7, 2019 — 1:55

5. September 28, 2019 — 1:45

6. October 4, 2019 — 2:00

7. October 12, 2019 — 0:20

8. May 19, 2020 — 0:45

(ECF No. 66-2). As such, Petitioner is not entitled to recover these fees for these 16:35, and Petitioner's requested award is **THEREFORE REDUCED** by **$2,072.92**.

Respondents next attack Petitioner's August 1, 2019 entry for 1:50 in which he consulted with Mr. Kabura's son and "prepare[d] alien relative petition for son, and submit[ed it] to USCIS," arguing that such work was not reasonably related to this matter. (ECF No. 66-2 at 4). Petitioner is only entitled to recover fees for the time he spent on this litigation. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (recognizing that in "determining the amount of a reasonable fee," the court should consider "the number of hours reasonably expended *on the litigation*" (emphasis added)). Petitioner argues that such work for this litigation, as it "was rendered as part of Mr. Kabura's need to defend against charges of deportability in the Immigration Court and would not have occurred had USCIS not commenced Immigration Court proceedings against him." The court agrees. As discussed above, Respondents' initial position in this case was its unreasonable decision to initiate removal proceedings against Petitioner. Filing an "alien relative petition" was a defense to such action and an attempt to find an alternative way to prevent Mr. Kabura from being removed. The court therefore finds that Petitioner is entitled to recover the time he spent preparing and submitting that petition.

Finally, the court agrees that Petitioner is not entitled to recover the $51.25 related to his November 24, 2017 time entry. That entry states that he spent 25 minutes "prepar[ing] and submitt[ing] correction to mem in oppos" and "review[ing] judge-specific protocol re courtesy submissions and mail[ing] courtesy submissions." (ECF No. 66-2 at 3). The court notes that no such correction to Petitioner's Memorandum in Opposition to Respondents' Motion to Dismiss (ECF No. 10) was filed and cannot therefore discern whether this time is recoverable. While the time he spent reviewing protocol and mailing courtesy submissions could potentially be recoverable, the court cannot discern how much of the 25 minutes were devoted to such actions. *See Case v. Unified Sch. Dist. No. 233, Johnson Cty., Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998) ("A district court is justified in reducing the reasonable number of hours if the attorney's time records are 'sloppy and imprecise' and fail to document adequately how he or she utilized large blocks of time." (citation omitted). Petitioner's requested award is therefore **REDUCED** by **$51.25**.

Respondents do not raise any specific objections to the costs Petitioner requests in his Bill of Costs. After reviewing the same, the court finds them reasonable and **HEREBY AWARDS** Petitioner costs in the amount of **$826.40**.

## CONCLUSION

As more fully discussion herein, Petitioner's Bill of Costs (ECF No. 65) and Motion for Attorney's Fees Pursuant to the Equal Access to Justice Act (ECF No. 66) are **GRANTED IN PART AND DENIED IN PART**. Petitioner is awarded **$7,750.83 IN ATTORNEY'S FEES** and **$826.40 IN COSTS**, for a **TOTAL AWARD OF $8,577.23**.

DATED this 17th day of August, 2020.

BY THE COURT:

_____
Clark Waddoups
United States District Judge